**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DIANA PRICE,**

        **Plaintiff,**

-vs-                                          **Case No.  6:05-cv-1064-Orl-31KRS**

**CITY OF ORMOND BEACH, FLORIDA &**
**LARRY MATHIESON,**

        **Defendants.**

_____

# ORDER

The Plaintiff, Diana Price ("Price"), sued the Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000(e), *et seq.*, and various Constitutional violations under 42 U.S.C. section 1983.[1] This matter is presently before the Court on the Defendant, Larry Mathieson's ("Mathieson") Motion to Dismiss Count III (Doc. 28) and Price's Opposition thereto (Doc. 34).

**I.   Background**

    A. Facts

Price began working for the City of Ormond Beach Police Department ("OBPD") in March of 2000.[2] She began working as a patrol officer, and was promoted to the position of Detective in

---

[1] Price's Amended Complaint appears at Doc. 26.

[2] The Defendant City of Ormond Beach (the "City"), which maintains offices in Ormond Beach, Florida, was Price's employer.  Mathieson was the Chief of Police for the City of Ormond Beach.

the Criminal Investigation Division in January of 2003.[3]  Throughout her employment with OBPD, Price alleges that she was subjected to demeaning remarks of a graphic and sexual nature.  On March 17, 2004, Price wrote a letter to her supervisor, Sergeant Coluccio ("Coluccio"), detailing inappropriate behavior and derogatory sexual comments made by members of OBPD and stating that she felt uncomfortable in the workplace.[4]  As a result of her complaint, "the entire Police Department was forced to attend sexual harassment training."

On March 23, 2004, a male detective in Price's department, Detective Elkins ("Elkins") filed an internal complaint against her, alleging that she had made an improper report to the Department of Children and Families.  Following Elkins' complaint, Coluccio and Corporal Davis attempted to persuade the State Attorney's Office to file criminal charges against Price related to the allegedly improper report.  Mathieson approved Coluccio and Davis' efforts to present the issue to the State Attorney.  The State Attorney's Office chose not to file criminal charges against Price.  After the State Attorney's Office rejected the case, OBPD began an internal affairs investigation into the case and concluded that Price had violated policy and suspended her for forty hours without pay.[5]  Price alleges that her suspension was "unusually harsh" given the nature of the alleged offense, and that similarly situated male employees did not receive such severe punishments for similar offenses.

---

[3] At that time, Price was the only female detective in the Criminal Investigation Division.

[4] From March of 2000 through March of 2004, the City evaluated her work performance as "satisfactory or higher."

[5] Price alleges that the internal investigation was "one sided," because neither the individual involved in her report nor any employees of the Department of Children and Families were interviewed.

Coluccio then drafted a memo on June 14, 2004, to Mathieson requesting that Price be demoted "back to patrol." Coluccio stated that his request for Price's demotion was motivated by Price's "'overall performance' as a 'team player,'" the sustained internal affairs investigation, and a cell phone bill.

Price began the process of filing a charge with the EEOC and the Florida Commission on Human Rights ("FCHR") in July of 2004. Members of the OBPD were aware that she had begun this process and, immediately after she began this process, the Defendants began another internal affairs investigation against her.[6] It had been alleged that Price was serving as a "courtesy officer" at her apartment complex and receiving a discounted rental rate for her apartment. The investigation concluded that these allegations were "sustained," and she was suspended for eighty hours without pay.[7] Price filed a formal charge with the EEOC and the FCHR on July 24, 2004, in which she stated that she had been discriminated against on the basis of her sex and retaliated against for complaining of that discrimination.

Three days later, Price was demoted to the position of patrol officer and assigned to the midnight shift.[8] The patrol car to which she was assigned was infested with roaches and had to be fumigated.

---

[6] Price describes this second internal affairs investigation as "retaliatory."

[7] Price alleges that this discipline was "unusually harsh," and that the investigation uncovered the fact that a male police officer was receiving a discounted rental rate from the same apartment complex but that male officer was not disciplined.

[8] Price asserts that the midnight shift was a less desirable shift than the day shift to which she had been assigned as a detective.

In October of 2004, Price reported to one of her superiors, Corporal Doubleday ("Doubleday"), that Coluccio frequently engaged in sexual misconduct while on duty in the OBPD building. Then, on November 5, 2004, Sergeant Corn ("Corn") inspected Price's vehicle and reprimanded her for not having a clean vehicle. Such inspections are normally performed monthly, in the officer's presence and by the officer's commanding officer. However, Corn was not Price's commanding officer, did not perform the inspection in her presence, and conducted the inspection despite the fact that Price's commanding officer had completed an inspection of Price's vehicle several days earlier. When Price questioned Corn about the inspection, he wrote her up for insubordination.[9]

In mid-December of 2004, Price was told that she could not have Christmas Day off of work, despite the fact that she had previously been told that she could. Price met with Division Chief Osterkamp ("Osterkamp") and Doubleday on December 20, 2004, to discuss her leave time. During that meeting, Price informed Osterkamp and Doubleday that she was being subjected to inappropriate behavior and that there was corruption in the OBPD. After Price left the meeting, Doubleday informed Osterkamp that Coluccio and another city employee frequently engaged in sexual misconduct while on duty in the OBPD building. Then, on December 21, 2004, Price's roommate sent an email to two Ormond Beach City Commissioners disclosing the sexual misconduct, informing them that supervisory personnel in OBPD had been aware of those activities, and stating that Price was being discriminated and retaliated against because of her EEOC charge. The email also alleged that Mathieson was covering up several other sexual

---

[9] Price asserts that similarly situated male employees were not treated in the same manner regarding vehicle inspections.

harassment complaints. This email created a public controversy and, soon thereafter, OBPD began an internal investigation into the conduct.

Price was interviewed on January 25, 2005 in connection with the internal investigation. She testified that she was aware of the sexual misconduct, she had reported it several times to supervisory personnel at OBPD, and that Mathieson condoned the misconduct. Ultimately OBPD concluded that the allegations of misconduct against Coluccio were "sustained," but that the allegations against Mathieson were "unfounded."

Price was ordered to report to the Criminal Investigation Division on June 13, 2005, where she was told that she was under criminal investigation. She had to turn in her badge, gun, identification and keys, and was placed on paid administrative leave. She later learned that the investigation concerned her relationship with a local restaurant and bar owner, her occasional presence at his establishment, and her use of a police computer to research criminal history records.[10] Mathieson again made the decision to present her case to the State Attorney for criminal charges. Three days later, four OBPD officers (including a hostage negotiator) arrived at Price's home and explained that they were responding to a call from OBPD which stated that Price was attempting to commit suicide. The officers also explained that they were there to "Baker Act" her. The OBPD subsequently blamed the incident on a "misinterpretation," and stated that it was a "well being check."

That same month, Price called in to a local talk radio station to confront Mathieson and to contradict his version of recent events. Shortly thereafter, Mathieson directed his Internal Affairs

---

[10] Similarly situated officers were not placed on administrative leave after allegedly committing similar violations.

officer to compile a list of Price's disciplinary records for use in a smear campaign against her conducted by a coalition supporting Mathieson.

Price filed her original Complaint with this Court on July 19, 2005, alleging unlawful discrimination and retaliation, and simultaneously filed a similar complaint in Florida state court. On September 28, 2005, the State Attorney's Office determined that there was no cause to pursue criminal charges against Price. Approximately a week later, on October 3, 2005, Mathieson formally requested a meeting with the State Attorney's Office concerning the handling of Price's case and the decision not to press charges against her. Then, on October 11, the OBPD proceeded with an internal affairs investigation against Price,[11] after which Mathieson concluded that there was evidence to indicate that Price committed serious violations. Mathieson terminated Price's employment effective November 4, 2005. Following her termination, Mathieson sent a letter to the Florida Department of Law Enforcement requesting that Price's law enforcement license be revoked.

Price asserts that during Mathieson's eight years as Chief of Police, she (Price) was the only officer to ever file a charge with the EEOC, and the only officer against whom the OBPD ever initiated criminal charges.

B. Claims and Arguments

Price has brought a number of claims against the City and Mathieson, only one of which is relevant here. In Count III, Price asserts that: (1) she was a full time employee of the City with "regular status," and could only be dismissed for good cause; (2) Mathieson, the final decision

---

[11] Price asserts that this investigation was "procedurally deficient."

maker in the matter, terminated Price's employment; and (3) in terminating her employment, Mathieson deprived her of her due process rights by failing to provide her with a fair, unbiased and objective predetermination hearing. Therefore, Price asserts, under 42 U.S.C. section 1983, that Mathieson violated her Fourteenth Amendment procedural due process rights.

Mathieson asserts that Count III must be dismissed because Price has not alleged that sufficient state remedies were unavailable.

## II.     Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10©); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff

to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id*. (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

### III.  Legal Analysis

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has interpreted this clause as providing two types of constitutional protection -- procedural and substantive due process -- and a violation of either may form the basis for a suit under 42 U.S.C. section 1983. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).[12] Procedural due process "requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property."[13] *Id*. at 1561. It is not the deprivation of a protected interest that causes a violation, but rather, "[i]t is the state's failure to provide adequate procedures to

---

[12] Substantive due process is not at issue in this Order.

[13] A plaintiff such as Price, who "complains that a state lacks constitutionally adequate procedures for termination of employees or asserts that [her] particular hearing was not fair and impartial . . . has raised only procedural due process concerns." *McKinney*, 20 F.3d at 1559.

remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000); *see also McKinney*, 20 F.3d at 1557 (it is "only when the state refuses to provide a process sufficient to remedy the procedural deprivation [that] a constitutional violation actionable under section 1983 arise[s]."). Thus, A person may suffer a deprivation, such as the termination of her employment, but she will not have suffered a violation of her procedural due process rights "unless and until the [state] refuses to make available a means to remedy the deprivation." *Id*. at 1563. This is because "a procedural due process violation is not complete unless and until the State fails to provide due process. . . . [T]he state may cure a procedural deprivation by providing a later procedural remedy . . . ." *Id.*; *see also Cotton*, 216 F.3d at 1331 n.2 ("[P]rocedural due process violations do not even exist unless no adequate state remedies are available.").[14]

---

[14] *See also Zinermon v. Burch*, 494 U.S. 113 (1990):

> The Due Process Clause also encompasses . . . a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Id*. at 125-26 (internal citations omitted) (emphasis in original).

Therefore, a plaintiff has not stated a Section 1983 claim unless inadequate procedures exist to remedy an alleged procedural violation, because

> the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora -- agencies, review boards and state courts before being subjected to a claim alleging a procedural due process violation.

*Cotton*, 216 F.3d at 1331 (internal citations and quotation omitted). Accordingly, if adequate state remedies were available, but a plaintiff did not avail herself of them, that plaintiff "cannot rely on that failure to claim that the state deprived [her] of procedural due process." *Id*. To be considered "adequate," the state procedures do not have to provide all of the relief available to the plaintiff under Section 1983; instead, "the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id*.

Therefore, a Section 1983 claim alleging the denial of procedural due process "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal citation and quotation omitted). Mathieson only argues that Price has failed to adequately plead the third element. To support the element of constitutionally-inadequate process, a plaintiff must allege that the state failed or refused to make available a means to remedy the deprivation or that those remedies were inadequate. *See Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1379 (S.D. Fla. 2002); *Gainer v. City of Winter Haven, Fla.*, 170 F. Supp. 2d 1225, 1233 (M.D. Fla. 2001); *Stewart v. Town of Zolfo Springs, Fla.*, 1997 WL 689448, *2 (M.D. Fla. Aug. 27, 1997). Price has made no such allegation, and thus she has failed to state a claim for a procedural due process violation.

> Price argues, however, that she has
>
> alleged actions taken by Defendant Mathieson for which no state procedural remedy is in place. Such acts include Defendant Mathieson repeatedly seeking criminal prosecution of Plaintiff Price, directing a "smear campaign" against Price, ordering bogus internal criminal investigations, or publicly ordering "suicide" checks on Price.

(Doc. 34 at 4). A review of the plain language of Count III, however, reveals that Price has made no such allegations in regard to her claim for a procedural due process violation. In Count III, Price specifically alleges:

> 83. Ms. Price, during all relevant times, was a Full-Time employee of the [City] with Regular Status and could only be dismissed for good cause. Ms. Price had a protectible property interest guaranteed by the United States Constitution. Accordingly, Ms. Price should not have been deprived of that property interest without the proper predetermination procedures.
>
> 84. On or about November 2, 2005, *Defendant Mathieson, acting under color of law, terminated Ms. Price's employment*, effective November 4, 2005. Defendant Mathieson was the final decision maker with respect to Ms. Price's termination.
>
> 85. In taking this action against Ms. Price, *Defendant Mathieson deprived Ms. Price of her rights to due process by terminating her without fulling (sic) complying with the applicable state laws*, including Fla. Stat. 112.532, and municipal ordinances. Specifically, Ms. Price was not provided a fair, unbiased and objective predetermination hearing.

(Doc. 26 at 16) (emphasis supplied). Price has clearly limited her procedural due process claim to the termination of her employment, and in regard to her termination, she has not alleged that the State of Florida has provided inadequate remedies for her deprivation. Therefore she has failed to state a claim for a procedural due process violation.

**IV.   Conclusion**

For the reasons stated herein, it is

**ORDERED THAT** Mathieson's Motion to Dismiss Count III is GRANTED.  Price shall have ten days from the date of this Order to file an amended complaint.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 19, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party